ORIGINAL

FILED

JUL 21 2009

CLERK U.S. BANKRUPTCY COURT
CENTRAL DISTRICT OF CALIFORNIA
BY:                     Deputy Clerk

Surjit P. Soni (State Bar No. 127419)
THE SONI LAW FIRM
35 North Lake Avenue, Suite 720
Pasadena, California  91101
TEL:(626) 683-7600
FAX:(626) 683-1199

Attorney for:
Legendary Hollywood, LLC

# UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA

### SANTA ANA DIVISION

In Re:

Detroit Properties, LLC,

　　　　　　Debtor.

) CASE NO.: 8:09-bk-16272-ES
)
) Chapter 11
)
) **MEMORANDUM OF POINTS**
) **AND AUTHORITIES IN**
) **SUPPORT OF MOTION FOR**
) **RELIEF FROM STAY UNDER 11**
) **U.S.C. §362 AND FOR**
) **SANCTIONS PURSUANT TO**
) **RULE 9011.**
)
) Date: August 11, 2009
) Time: 9:30am
) Courtroom:5A
) Judge: Hon. Erithe A. Smith

## TABLE OF CONTENTS

I.    INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

II.    FACTUAL BACKGROUND . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

    A.    The Property . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

    B.    Debtor's Interest In the Property . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

    C.    Legendary's Interest In The Property . . . . . . . . . . . . . . . . . . . . . . . . 5

    D.    Borrower's Defaults . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

    E.    Bankruptcy Proceedings and Papers . . . . . . . . . . . . . . . . . . . . . . . . 6

    F.    There is Little to No Equity in the Property . . . . . . . . . . . . . . . . . . . 8

    G.    The Property is Not Adequately Insured . . . . . . . . . . . . . . . . . . . . . . 9

III.    REQUESTED RELIEF . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

IV.    LEGAL AUTHORITY . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

    A.    Cause Exists Under 11 U.S.C. §362(d)(1) to Terminate the Automatic
        Stay with Respect to the Property Because Legendary is Not Adequately
        Protected . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

    B.    There is Also Cause to Terminate the Stay With Respect to the Property
        Under Section 362(d)(2) Because (i) Debtor  Has Little to No Equity in
        the Property and (ii) Debtor Has No Reasonable Prospects of
        Reorganization.  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

        1.    Debtor Has Little to No Equity in the Property.  . . . . . . . . . . . 16

        2.    Debtor Cannot Demonstrate a Reasonable Probability of
              Reorganization . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

C.    Debtor's Filing of This Petition Part of A Scheme to Delay, Hinder Or
Defraud Legendary . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  20

D.    Debtor and It's Counsel Should Bear the Increased Costs and Debt
Caused by Their Tactics Which Delayed Foreclosure of the Property
. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  22

E.    Waiver of Bankruptcy Rule 4001 Stay  . . . . . . . . . . . . . . . . . . . . . . .  24

V.    CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  25

1

# TABLE OF AUTHORITIES

2

<u>CASES</u>                                                                    <u>PAGE</u>

3

4    Ca. Fed. Bank FSB v Douglas (In re Douglas),
        141 B.R. 252 (Bankr.N.D.Ga. 1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23
5

6    Grundy Nat'l Bank v. Tandem Mining Corp.,
        754 F.2d 1436 (4th Cir. 1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18
7

8    In re 6200 Ridge, Inc.,
        69 B.R. 837 (Bankr.E.D.Pa. 1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17
9

10   In re 8th Street Village Ltd. Partnership,
        94 B.R. 993 (N.D. Ill. 1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18
11

12   In re A Partners,
        344 BR. at 121 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12
13

14   In re Albany Partners, Ltd.,
        749 F.2d 670 (11th Cir. 1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18
15

16   In re Case,
        115 B.R. 666 (B.A.P. 9th Cir. I990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11
17

18
19   In re Computer Dynamics,
        252 B.R. 50 (Bankr.E.D.Va. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22
20

21   In re Ellis,
        60 B.R. 432 (9th Cir. B.A.P. 1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10
22

23   In re Grigsby,
        223 B.R. 558 (Bankr.S.D.Fla. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23
24

25   In re Jewett,
        146 B.R. 250 (9th Cir. B.A.P. 1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10
26

27   In re Johnson,
        2008 WL 183342 (Bankr.W.Va.2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23
28

In re Kenny Kar Leasing, Inc.,
        5 B.R. 304  (Bankr. C.D. Cal 1980) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

In re Kost,
        102 B.R. 829 (Dist. Wyo. 1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

In re L&M Properties, Inc.,
        102 B.R. 481 (Bankr.E.D, Va, 1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

In re MacDonald,
        755 F.2d 715 (9th Cir, 1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

In re Mallas Enters, Inc.,
        37 B.R. 964 n(9th Cir. B.A.P. 1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

In re McCombs Properties VI, Ltd.,
        88 B.R. 261 (Bankr·. C.D. Cal. 1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

In re Mellor,
        734 F.2d 1396 (9th Cir. 1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11, 12

In re Pegasus Agency, Inc.,
        101 F.3d 882 (2d Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

In re Sun Valley Newspapers, Inc.,
        171 B.R. 71 (9th Cir. B.A.P. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

In re Weiss,
        111 F.3d 1159 (4th Cir. 1997),
        cert. den., 522 U.S. 590, 118 S.Ct. 369 (1997) . . . . . . . . . . . . . . . . . . . . . . . . 23

La Jolla Mortgage Fund v. Rancho El Cajon Associates,
        18 B.R. 283 (Bankr. S.D Cal. 1982) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

Sun Valley Ranches, Inc. v. Equitable Life Assurance Society of the United States (In
re Sun Valley Ranches, Inc.),
        823 F.2d 1373 (9th Cir. 1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11, 18

United Sav. Ass'n of Tex. v. Timbers of Inwood Forest Assocs., Ltd. (In re Timbers of Inwood Forest Assocs., Ltd.),
    484 U.S. 365 (1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17, 18

United Savings Assoc. of Texas v. Timbers of Inwood Forest Associates, Ltd.,
    44 U.S. 365, 108 S.Ct. 626, 98 L.Ed.2d 740 (1988)  . . . . . . . . . . . . . . . . . . . 15

MISC

3 COLLIER ON BANKRUPTCY §362.07[4J[b] at 362-101  . . . . . . . . . . . . . . . . 17

10 Collier on Bankruptcy ¶9011.04[8][c]  . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

11 U.S.C. §362  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

11 U.S.C. §362(a)  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 25

11 U.S.C. §§362(B)  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 9

11 U.S.C. §§362(d)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 9, 25

11 U.S.C. § 362(d)(2)  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15, 20, 25

11 U.S.C. § 362(d)(2)(A)  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

11 U.S.C. § 362(d)(2)(B)  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

11 U.S.C. §§362(d)(2)Z(A) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 9

11 U.S.C. §362(d)(3)(B)  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

11 U.S.C. §§362(d)(4)(B)  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 9

11 U.S.C. § 362(g) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

Fed.R.Bank.P. 9011(b)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

Federal Rule of Bankruptcy Procedure 4001 (a)(3) . . . . . . . . . . . . . . . . . . . . . . 24

Legendary Hollywood, LLC ("Legendary"), by and through undersigned counsel, hereby files this "Memorandum of Points and Authorities in Support of Motion for Relief from the Automatic Stay Under 11 U.S.C. §362(a) (the "Memorandum") and requests, pursuant to 11 U.S.C. §§362(d)(1), (d)(2)Z(A) and (B), (d)(4)(B) of the Federal Rules of Bankruptcy Procedure, an order of this Court granting the Bank's Motion for Relief from the Automatic Stay Under 11 U.S.C. §362 (the "Motion"). The Motion is supported by this Memorandum, the Real Property Declaration (the "Bhvnani Decl."), the Ling and Soni Declarations and the concurrently filed Request for Judicial Notice, and all pleadings and papers of record in this case.

## I.    INTRODUCTION

Legendary is the assignee of the Deed of Trust to East West Bank ("EWB") pursuant to a recorded Assignment of Deed of Trust dated June 2, 2009 in the amount of $10,000,000 and is now secured creditor of KLM Capital Group, LLC (the "Borrower"). See Ling Decl. ¶20 and Exhibit 9. The total current outstanding due to Legendary as of the date of the hearing on this motion is $8,239,093.29. See Soni Decl. ¶28, Bhvnani Decl. ¶6.

Debtor in this case, Detroit Properties, LLC ("Detroit") was formed on December 3, 2008 to take title to the real property located at 1407, 1411 and 1417 N. Detroit St. in Los Angeles County, California (the "Property") after subordinated lender, MKA Real Estate Opportunity Group 1, LLC ("MKA"), foreclosed on the Borrower on November 18, 2008. See Ling Decl. ¶12, 17, Req For Jud. Not. ¶5 Exhs 5, 6, 10 and Exh. A. Because the Property was purportedly secured by MKA on a fully subordinated junior basis, MKA did not have an interest in the Property at the time of foreclosure because the Property's value is significantly less than Legendary's

1  senior loan.[1]  Detroit obtained no greater interest in the Property than MKA had.

2       EWB had noticed a foreclosure sale pursuant to duly filed duly recorded Notice

3  of Default and Notice of Sale for June 3, 2009 because neither Borrower, not MKA or

4  Debtor were making payments and because the loan matured on June 1 without

5  payment. Ling Decl. ¶19.

6       On June 2, 2009, the eve of the foreclosure, MKA, Debtor's sole Member,

7  caused the Property to be transferred to MKA by Grant Deed for no apparent

8  consideration forcing the foreclosure to be delayed because MKA was in bankruptcy

9  pursuant to an involuntary petition filed on April 23, 2009, Case No. 8:09-bk-13613.

10 Ling Decl. ¶21 and Exh. 11.   Debtor's and MKA's transfer was solely to hinder and

11 defraud EWB (and Legendary) because MKA had pending before the Bankruptcy

12 Court a motion to dismiss the bankruptcy scheduled to be heard on June 9, 2009 and

13 because neither Detroit nor MKA had any reasonable expectation for reorganization.

14      On June 9, 2009, MKA prevailed on its motion to dismiss the bankruptcy.

15 Legendary rescheduled the foreclosure sale to June 25, 2009 after entry of the Court's

16 dismissal order.  See, Soni Decl. ¶¶15-17 and Exh. 14.

17      On June 24, 2009, MKA reconveyed the Property to Detroit and caused Detroit

18 to file a Chapter 11 bankruptcy petition thereby again delaying and preventing the

19 foreclosure sale from proceeding on June 25, 2009. See Soni Decl. ¶18-20, Req For

20 Jud. Not. ¶8 and Exh. 15 and 16. Detroit filed what is commonly called a "face

21 sheet" filing consisting of the Petition and few other papers, without the Schedules or

22 Statement of affairs.

23      Detroit had no business prior to receiving title to the Property by Grant Deed

24 from MKA in January 2009 and has no other assets (other than $10,871.25) or

25 business even now.  See Soni Dec. ¶23 and 42 and Exh. 18 (Statement of Financial

26 Affairs) and 22 (Schedules filed by Debtor July 20, 2009). Debtor has finally

27

28      [1] Neither EWB nor Legendary are or were ever a creditor of the Debtor or
MKA.

2

admitted, after having failed to identify this case as such in its petition and despite
repeated demands to correct the filing, that this case is subject to the Single Asset
Real Estate ("SARE") provisions.  See, Soni Decl. ¶21 and Exh 17. Moreover, Detroit
is saddled by debts of its sole Member, MKA and Detroit has a recorded a Deed of
Trust, Assignment of Leases and Rent, Security Agreement and Fixture filing in favor
of Gottex Fund Management, Ltd. In the total amount of $69,071,704.   See Ling
Decl. ¶23, Soni Decl. ¶30 and Exh. 12.

EWB had conducted an appraisal of the Property as of June 5, 2009 which
revealed that the As-Is value of the Property is only $7,700,000, about $500,000 less
than the amount payable to Legendary.  See Kapadia Decl. and Exhibit 4.  Debtor
claims the Property is worth $8,800,000 but that claim is unsupported by any
independent valuation.  See, Soni Decl. ¶42 and Exh. 22. Moreover, even if the
Property is worth what Debtor claims, there is still no equity as Legendary's claim
exceeds $8.2 million.

Legendary submits that cause exists to grant its Motion because (1) it's interest
in the Property is not adequately protected and (2) the Debtor has no equity in the
Property and no reasonable prospects of reorganization.  Moreover, the Debtor was
created for the sole purpose of filing bankruptcy, Debtor filed only a Face Sheet filing
with few pages and none of the Schedules and there have been multiple bankruptcies
affecting the Property.  Debtor's filing is part of a scheme to delay, hinder and
defraud creditors.  Debtor and it's Counsel should bear the increased debt and costs
incurred by Legendary as a result of the delay.

## II.    FACTUAL BACKGROUND

### A.    The Property

The Property is comprised of 3 lots in Hollywood, California bearing the
addresses 1407, 1411 and 1417  North Detroit Street. See Exh. A. The Property is a
development site intended to be 23 condominiums ("the "Project").  See, Kapadia

1  Decl. ¶8 and Exh. 4. The Project is incomplete. The Borrower abandoned the Project

2  with about 17% yet to be finished. *Id.*

3       In February 2009, MKA submitted a cost to complete budget to EWB in an

4  attempt to convince EWB to draw on the unfunded portion of the Borrower's

5  construction loan to complete the Project. See Ling Decl. ¶18 and Exh. 13. Although

6  there was about $2.4 million unfunded under the construction loan, MKA estimated it

7  would take no less than six months and $2,813,149.99 to complete the work. *Id.* EWB

8  declined to extend credit to MKA. *Id.* Apparently, MKA was not able to raise the

9  capital needed to complete the Project and neither MKA, nor Debtor did any work at

10  the Property after they acquired title. The Project has been sitting idle for over 9

11  months.

12       The Project is neither adequately secured against entry by trespassers, nor the

13  weather; doors and windows are open to the world the building is not tarped. A

14  recent visit to the Property in May 2009 revealed that vagrants were occupying

15  several of the condominiums. See, Ling Decl ¶25 and Soni Decl. ¶11. Debtor has

16  been informed of the condition and has taken no action to remedy the situation.

17

18       **B.    Debtor's Interest In the Property**

19       On January 12, 2009, Debtor acquired its interest in the Property by Grant

20  Deed from MKA, its sole Member. See, Soni Decl. ¶23, Ling Decl. ¶10 and Exhs. 17

21  and 18. MKA had foreclosed on the Property on November 18, 2008. See, Soni

22  Decl. ¶23and Exh 18.  Prior to foreclosure MKA held a deed of trust on the Property

23  securing a loan and note in the amount of $3,789,000 which it had agreed would be

24  fully subordinated EWB's deed of trust securing its construction loan in the amount

25  of $10,000.000. *Id.,* Ling Decl. ¶11.  MKA's foreclosure did not affect its agreement

26  to have its rights subordinate to those of EWB. Consequently, MKA rights to the

27  Property after foreclosure remained subordinate to the deed of trust in favor of EWB.

28

## C.    Legendary's Interest In The Property

On June 1, 2009, EWB recorded an Assignment of Deed of Trust reflecting a transfer of its entire interest in the deed of trust, together with the Note to Legendary. See, Ling Decl. ¶20, Soni Decl.¶7, Req For Jud. Not. ¶4 and Exh 9.

The Note was executed by the Borrower, KLM, on January 8, 2007 in connection with a written Construction Loan Agreement with EWB for $10,000,000. See Ling Decl. ¶8, Soni Decl. ¶9 and Exh 2.   To evidence the Loan Agreement, KLM executed that certain "Promissory Note" (the KLM Note") dated January 8, 2007.  See Ling Decl. ¶9, Soni Decl. ¶10 and Exh 3.

KLM's obligations under the Loan Agreement and the KLM Note are secured by that certain "Construction Deed of Trust" (the "EWB Deed of Trust") dated January 8, 2007, wherein KLM granted the EWB a lien and security interest on, among other things, the Property.  The EWB Deed of Trust was recorded with the Los Angeles County Recorder's Office at Instrument No.20070190248 on Jan. 30, 2007. See Ling Decl. ¶8, Soni Decl. ¶10 and Exh 1.

KLM's obligations under the Loan Agreement are further secured by that certain "Guaranty" (the "KLM Guaranty") executed by KLM Capital Group and its members, Isaac Laufer, Steven Mirman and Steven Kreitenberg in their individual capacities and in their capacities as Members of KLM Capital Group, LLC,  wherein they guaranteed the obligations of KLM to EWB under the Loan Agreement and KLM Note.  See Ling Decl. ¶10, Soni Decl. ¶11 and Exh 3C.  The Loan Agreement, KLM Note, and the KLM Guaranty are collectively referred to herein as the "KLM Loan Documents."

On August 1, 2008, EWB and KLM entered into a written Modification of the Loan Agreement and a Change in Terms Agreement which, among other things, reset the maturity date to June 1, 2009.  See Ling Decl. ¶13, Soni Decl. ¶14 and Exh 3A and 3B. Guarantors to the Note consented to the Modification and Change in Terms Agreements.  See Ling Decl. ¶13, Soni Decl. 15 and Exh 3E.

**D.     Borrower's Defaults**

On or about June 27, 2008, MKA recorded a Notice of Default of the MKA Loan against the borrower. See Ling Decl. ¶15, Soni Decl. ¶16, Req For Jud. Not. ¶1 and Exh 6. Pursuant to it's Notice of Sale, MKA foreclosed on the Property on November 18, 2008 taking title subject to EWB'senior lien and deed of trust. *Id.*

On February 9, 2009, EWB declared events of default because of Borrower's failure to make payment due February 1, 2009. See, Ling Decl. ¶19, Soni Decl. ¶9, Req For Jud. Not. ¶2 and Exh 7. A Notice of Sale was recorded May 13, 2009 and the Property was scheduled to be sold at foreclosure sale on June 3, 2009. See, Ling Decl. ¶19, Soni Decl. ¶9, Req For Jud. Not. ¶3 and Exh 8. Maturity date of the EWB was June 1, 2009. Notwithstanding the maturity of the Note on June 1, 2009, KLM did not repay to EWB the unpaid balance of the Note as required, resulting in a further default of the Note.

**E.     Bankruptcy Proceedings and Papers**

On June 2, 2009, to avoid foreclosure, Debtor, Detroit transferred its entire interest in the Property to MKA which was subject to an involuntary bankruptcy petition filed against MKA on April 23, 2009, Case No. 8:09-bk-136 13. See Ling Decl.¶21, Soni Decl. 12, Req For Jud. Not. ¶6 and Exh 11. MKA had maintained it that case that the bankruptcy should be dismissed and had a motion to dismiss pending before the Court scheduled to be heard on June 9, 2009. Consequnetly, the transfer of the Property to MKA was a sham and a transparent scheme to improperly delay and hinder EWB's (and Legendary's) foreclosure of the Property and to defraud EWB and Legendary.

MKA's bankruptcy was in fact dismissed by the Court on June 9, 2009. The order of the Court entered on June 22, 2009. See Soni Decl. ¶16, Req For Jud. Not. ¶8 and Exh 14.

On June 24, 2009, Debtor filed its voluntary petition for relief under Chapter 11 of Bankruptcy Cade (the "Petition Date").  Detroit filed what is commonly called a "face sheet" filing consisting of the Petition and few other papers, without the Schedules or Statement of affairs. On the same date, less than one day before the rescheduled foreclosure of the Property by Legendary, MKA transferred the Property back to Debtor once again in a blatant attempt to delay the foreclosure.  See Soni Decl. ¶18-20,  Req For Jud. Not. ¶8 and Exh 15 and 16.  Debtor finally filed Schedules on July 20, 2009.  See Soni Decl. ¶42 and Exh. 22.

Even though Debtor had no other material assets or business, Debtor's Petition failed to disclose that it was subject to the Single Asset Real Estate ("SARE") provisions.  See Soni Decl. ¶21 and Exh 17. Only after repeated insistence by legendary's counsel did debtor's counsel finally agree to file an amendment to the petition to admit that the SARE provisions apply to this case. *Id.*

Debtor has also failed to maintain adequate insurance on the Property to protect Legendary's or the estate's interests.  Legendary's counsel inquired of Debtor whether insurance was in place.  See Soni Decl. ¶25.  In response, Debtor provided a copy of an insurance binder which did not list the Debtor or Legendary as insured parties and provided no protection against loss or damage to property.  See Soni Decl. ¶26 and Exh 19.  The binder on its face reflected it was in favor of a subcontractor and only provided protection against liability and workmens compensation claims. When Debtor was informed that the Policy did not property any protection to the Debtor, Legendary or the estate for loss of property, Debtor's counsel claimed ignorance and provided a new insurance binder purportedly covering the Property for up to $7,700,000 of loss or damage to the building.  See Soni Decl. ¶26 and Exh 20. No evidence was provided showing that the premium for this newly obtained insurance binder had been paid.  Despite repeated requests, no proof of paid insurance has been provided to this day.  Moreover, the coverage level provided is inadequate to protect the interests of legendary or the Estate and is lower that Debtor's claimed

value.

**F.    There is Little to No Equity in the Property**

EWB obtained an appraisal ("the Appraisal") of the Property on June 5, 2009. See Declaration of Vince A. Kapadia ("Kapadia Decl.). According to the Appraisal, the "as is" market value of the Property as of May 11, 2008 was $7,700,00. See Kapadia Decl. Ex. 4. Debtor claims the Property is worth $8,800,000 but that claim is unsupported by any independent valuation. See, Soni Decl. ¶41 and Exh. 22.

As of the hearing date of the Motion, Borrower's indebtedness to Legendary under the Loan Documents is no less than $8,239,093.29, with interest and attorney's fees continuing to accrue. Bhavnani Decl. ¶6, Soni Decl . ¶28. Moreover, a junior lien in favor of Gottex Management Fund, Ltd in the amount of $69,071,704 and two mechanics' liens, totaling not less than $43,090 encumber the Property. Soni Decl . ¶30.

In summary, as of the hearing date of the Motion, the Property is encumbered by the following liens and encumbrances:

| Lien Holder | Type | Amount |
|---|---|---|
| Legendary Hollywood, LLC | Deed of Trust | $  8,239,093.29 |
| Gottex Management Fund, LLC | Deed of Trust | $69,071,074.00[2] |
| Various Entities | Mechanic's Lien | $      43,090.00 |
| L.A. County Tax Collector | Real Property Taxes | $    138,901.00 |
| **Total** | | **$77,492,788.29** |

Accordingly, taking into account the outstanding loan balance due to Legendary under the Loan Documents, the sums due Gottex and recorded mechanics' liens on the Property which, all told, total no less than $77,492,788.29. The Property has an As-Is value of $7,700,000 according to a recent appraisal and Debtor's own

---

[2]Figures based on a review of Los Angeles County Recorder's Office records of liens on the Property, attached as Exhibit 12 to the Soni Declaration.

admission as reflected by the level of insurance it chose to purchase.  There is no equity in the Property.   In fact the Property has a negative equity in the approximate amount of -$69,792,788.29.   See Bhavnani Decl. ¶12c.  Even if Debtor's valuation of $8,800,000 for the Property is used,  the Property has a negative equity in the approximate amount of -$69,792,788.29.

### G.    The Property is Not Adequately Insured

There is no evidence of insurance.  A binder without proof of payment of the premium is not evidence of insurance.  Debtor has been repeatedly requested to provide evidence of insurance and has failed to do so.

The Binder does not reflect Legendary as an additional insured and it provides less coverage than the current outstanding balance due Legendary.

## III.    REQUESTED RELIEF

Pursuant to 11 U.S.C. §§362(d)(1), (d)(2)Z(A) and (B), (d)(4)(B) of the Federal Rules of Bankruptcy Procedure, Legendary requests that the Court terminate the automatic stay provision of section 362(a) to allow Legendary to exercise any and all of its non-bankruptcy rights in and to the  Property, including but not limited to, completing a foreclosure of Legendary's lien on the Property.

## IV.    LEGAL AUTHORITY

### A.    Cause Exists Under 11 U.S.C. §362(d)(1) to Terminate the Automatic Stay with Respect to the Property Because Legendary is Not Adequately Protected

Section 362(d)(1) provides as follows:

> On request of a party in interest and after notice and a hearing the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay - (1) for abuse, including the lack of adequate protection of an interest in property of such party in interest.

See 11 U.S.C. § 362(d)(1) (2009).

The Code does not define "cause" within the meaning of the statute and must be determined on a case by case basis. See *In re Jewett*, 146 B.R. 250, 251 (9th Cir. B.A.P. 1992) ("The question of whether cause exists for relief from the automatic stay must by determined on a case by case basis in the bankruptcy court's discretion."); *In re MacDonald*, 755 F.2d 715, 717 (9th Cir, 1986) ("Cause" is an intentionally broad and flexible concept that permits the bankruptcy court, as a court of equity, to respond to inherently fact-sensitive situations.). Regardless of the type of "cause" asserted by the moving party, the debtor has the burden of showing that there is no such "cause" to terminate the automatic stay. See 11 U.S.C. § 362(g); *see also In re Ellis*, 60 B.R. 432, 435 (9th Cir. B.A.P. 1985). If the debtor cannot meet its burden, the secured creditor must be granted stay relief. *See In re Mallas Enters, Inc.*, 37 B.R. 964, 967 (9th Cir. B.A.P. 1984).

The Bankruptcy Code specifically identifies lack of adequate protection as "cause" for relief from the automatic stay. *See Sun Valley Ranches, Inc. v. Equitable Life Assurance Society of the United States (In re Sun Valley Ranches, Inc.)*, 823 F.2d 1373, 1375(9th Cir. 1987) (citations omitted). The debtor has the burden to prove that the movant's interest in the property at issue is adequately protected. *Id.* (citations omitted).    To meet this burden, Debtor must prove that Legendary, as secured creditor, will realize the value of its bargain in light of all the facts and circumstances of the case. *In re Kenny Kar Leasing, Inc.,* 5 B.R. 304. 308 (Bankr. C.D. Cal 1980); *In re McCombs Properties VI, Ltd.,* 88 B.R. 261, 267-68 (Bankr·. C.D. Cal. 1988). Debtor cannot satisfy that burden.

An equity cushion is adequate is if there is sufficient value in the collateral to protect a secured creditor from a diminution in the value of its interest. *La Jolla Mortgage Fund v. Rancho El Cajon Associates,* 18 B.R. 283, 28788 (Bankr. S.D Cal. 1982). The 9th Circuit Court of Appeals has held that an equity cushion of twenty per cent is sufficient. *See In re Mellor,* 734 F.2d 1396, 1401 (9th Cir. 1984); *see also In re Kost,* 102 B.R. 829, 831-33 (Dist. Wyo. 1989)(An equity cushion under 11% is insufficient to constitute adequate protection.). *See In re Case,* 115 B.R. 666, 670 (B.A.P. 9th Cir. I990)("lf we were attempting to value [the secured creditor's] interest in the property for adequate protection purposes, the possibility of forced liquidation would be assumed and a deduction for selling costs would be

logical."). After adding carrying costs for less than the next three months, including post-petition interest, charges, advances, fees and costs in the amounts indicated in the attached declaration, there is no equity for the Debtor.

As of May11, 2008, the "As Is" market value of the Property was $7,700,000. As of the date of this Motion, Borrower's indebtedness to Legendary under the Loan Documents is no less than $8,239,093.29, with interest and attorney's fees continuing to accrue. Bhavnani Decl. ¶6 and Soni Decl. ¶28.  Furthermore,.  Moreover, the Gottex and mechanics' liens, totaling not less than $69,114.794.00 encumber the Property. *Id.* Accordingly, there is no equity in the Property, and certainly not the 20% adequate equity cushion espoused by the Ninth Circuit Court of Appeals in *In re Mellor.* Debtor's lien interest in the Property is worthless, as the value of the Property is not enough to satisfy the senior lender's note. As a bankruptcy court succinctly puts it, in such a scenario "the debtor's junior lien has no economic value to the bankruptcy estate." *In re A Partners*, 344 BR. at 121.

Given the current real property market conditions, where property values are on a decline and demand for real property remaining historically weak, it is likely that the value of the Property will continue to erode due not only to the continuing decline in property value but the continual accrual of interest and fees.  Moreover, the condition of this incomplete construction Project will also decline with time given the failure to protect it against mold, termites,  inclement weather and vandals.

Debtor may contend the Property has more value as a completed Project.[3]  The Appraisal put the value of the Completed Project at $14,845,000 and at $10,450,000 completed Bulk Value.  See Kapadia Decl. and Exh 4. However, neither of those values can be achieved by the Debtor lacks the finances, credit worthiness or resources to obtain the nearly $3 million dollars it needs to finish the construction (see Ling Decl. ¶18), not the money needed to service the Legendary and Gottex liens during the 6 months of construction or the estimated 23 months to sell of the completed inventory.  See Kapadia Decl. and Exh 4.  Nor does Debtor have the funds to pay the mechanics liens or accruing taxes and insurance necessary to deliver title to buyers once the Project is complete.

As is shown below, even if Debtor could raise additional funds by borrowing or otherwise, the highest value achievable from sale of the completed condominiums would be insufficient to pay off Legendary and the new money lender's principal, accrued interest during the period of completion and sale, sales and marketing expenses, insurance and taxes and administrative expenses.

//

//

//

---

[3]  Such a claim would be inconsistent with its admission of value by having purchased only $7.7 million in coverage for the Property.  Debtor also has admitted by its filed Schedules that the property is worth no more than $8,800,000.  See Soni Decl. ¶41 and Exh 22.

|  | Completed Bulk Sale | Completed Project Sale |
|---|---|---|
| Appraised Value | $10,450,000.00[4] | $14,845,000.00[5] |
| Selling Expense 8%[6] | [$  1,187,600.00] | [$     836,000.00] |
| Cost of Completion (assuming $4 mill in new loan to complete and service debt on Legendary & Gottex Loan at non-default rate (estimated at 6%) per SARE[7]) | [$  4,000,000.00] | [$  4,000,000.00] |
| Carry Cost During Construction Period (6 mos @ 6% for Legendary & Gottex loans and 11% for new loan to complete) | [$  4,437,021.15] | [$  4,437,021.15] |
| Carry Cost during Sales Period (6 mos for Bulk Sale) (23 months to sell individually) | [$  4,437,021.15] | [$15,375,631.07] |
| Taxes now due | [$     138,901.00] | [$     138,901.00] |
| Taxes[8] (1 year Bulk Sale) (2 Years if sold individually) | [$     58,056.31] | [$     116,112.62] |
| Insurances (Property, Liability and Course of Construction) | [$   200,000.00] | [$   200,000.00] |
| Administrative Expenses | unknown | unknown |
| Legendary Debt | [$ 8,239,093.29] | [$ 8,239,093.29] |

---

[4]See Kapadia Decl. And Exh. 4

[5] *Id.*

[6] See Bhavnani Decl. ¶12e

[7]  11 U.S.C. §362(d)(3)(B) requires that "each creditor whose claim is secured by such real estate" be paid monthly payments "in an amount equal to interest at the then applicable non-default rate on the value of the creditor's interest in the real estate.

[8] See Soni Decl.¶30, Ling Decl. ¶23, Req For Jud. Not. ¶7 and Exh 12.

| Net Residual Value | [$12,189,636.59] | [$22,882,482.38] |

Therefore, it is undisputed that Legendary's interest in the Property is not adequately protected, justifying immediate stay relief under section 3 62(d)( 1).

**B.    There is Also Cause to Terminate the Stay With Respect to the Property Under Section 362(d)(2) Because (i) Debtor Has Little to No Equity in the Property and (ii) Debtor Has No Reasonable Prospects of Reorganization.**

Pursuant to 11 U.S.C. § 362(d)(2), a party in interest may be granted relief from the automatic stay if: (i) the debtor does not have equity in the property; and (ii) the property is not necessary for an effective reorganization. Once the movant establishes that there is no equity in the collateral "it is the burden of the Debtor to establish that the collateral at issue is 'necessary to an effective reorganization." *See United Savings Assoc. of Texas v. Timbers of Inwood Forest Associates, Ltd.*, 44 U.S. 365, 375376, 108 S.Ct. 626, 98 L.Ed.2d 740 (1988) (citation omitted).

A "reasonable probability" of reorganization cannot be grounded solely on speculation, however, and a mere "financial pipe dream" is insufficient to meet the requirements of §362(d)(2). *See In re L&M Properties, Inc.*, 102 B.R. 481, 484 (Bankr.E.D, Va, 1989). At a minimum, the debtor must provide the Court with a broad outline of how it intends to employ the rehabilitative mechanisms of the Code to effectuate a reorganization within a reasonable time period. *Id.* Finally, to determine that there can be an effective reorganization of the debtor's business, the

debtor must persuade 13 the Court that the operations of the debtor's business will generate sufficient income to pay debt service. *Id.* at 485.

## 1.    Debtor Has Little to No Equity in the Property.

As of the date of this Motion, Borrower's indebtedness to Legendary under the Loan Documents is no less than $8,239,093.29, with interest and attorney's fees continuing to accrue. Soni Decl. ¶ 28 and Bhavnani Decl. ¶6.  Debtor's interest in the Property is junior and subservient to Legendary's as a result of the Subordination Agreement between EWB and MKA, Debtor's predecessor in interest through whom it obtained its interest. See, Ling Decl. ¶12 and Soni Decl. ¶13 and Exh. 5. There is no equity for Debtor to claim after Legendary's lien is accounted for.  In fact Legendary will have a deficiency claim of $539,093.29 as of the hearing date on this Motion *if* 100% of the $7.7 million As-Is Value is obtained at foreclosure. Furthermore, Debtor stands behind the Gottex and other mechanics' liens, totaling $69,114.794.00.  The Debtor has no interest in the Property.

Debtor cannot create additional value by completing the Project.  Debtor has no sources to obtain the nearly $3 million dollars it needs to finish the construction, nor the money needed to service the Legendary and Gottex liens during the 6 months of construction or the estimated 23 months to sell of the completed inventory.  It cannot pay accruing taxes and insurance.  Debtor's only other asset is $10,871.25 in the DIP Account. See Soni Decl. ¶23 and Exh. 18.  Net of  Legendary and the new money

lender's principal, accrued interest during the period of completion and sale, sales and marketing expenses, insurance and taxes and administrative expenses, there is no residual value in the Completed Project even if the highest value can be achieved.

### 2. Debtor Cannot Demonstrate a Reasonable Probability of Reorganization

Because Legendary has met its burden under § 362(d)(2)(A), the burden shifts to Debtor to demonstrate that there is a reasonable possibility of an effective reorganization. Bankruptcy Courts generally hold that the reference to an "effective" reorganization in 11 U.S.C. § 362(d)(2)(B) requires that relief from stay be granted if there is no reasonable likelihood of reorganization due to creditor dissent or feasibility considerations. *See In re 6200 Ridge, Inc.*, 69 B.R. 837, 843(Bankr.E.D.Pa. 1987) (citing numerous cases); *see also* 3 COLLIER ON BANKRUPTCY §362.07[4J[b] at 362-101.

In a chapter 11 reorganization case, it is not sufficient that property be necessary for any possible reorganization. Instead, the property must be necessary for an *effective* reorganization. This means there "must be a reasonable possibility of a successful reorganization within a reasonable time," and that the property at issue is necessary to that reorganization. *United Sav. Ass'n of Tex. v. Timbers of Inwood Forest Assocs., Ltd. (In re Timbers of Inwood Forest Assocs., Ltd.)*, 484 U.S. 365, 375-76 (1988) .

Similarly, "[t]he 'effective reorganization' requirement enunciated by the Supreme Court ... require[s] a showing by a debtor ... that a proposed or contemplated plan is not patently unconfirmable and has a realistic chance of being confirmed." *See In re Sun Valley Newspapers, Inc.*, 171 B.R. 71,75 (9th Cir. B.A.P. 1994). With that standard in mind, courts usually require the debtor to do more than manifest unsubstantiated hopes for a successful reorganization. *Id.* Finally, "[r]egardless of the amount of time a ease has been pending, if the evidence indicates that a successful reorganization within a reasonable time is impossible, the court *must* grant relief from the stay." *Id.* (emphasis added).  Under this test, therefore, relief from the stay should be granted if the debtor has no reasonable likelihood of reorganization. This might occur, for example, because reorganization of the business is not feasible or because creditor dissent makes a successful plan unlikely. *See United Sav. Ass'n of Tex. v. Timbers of Inwood Forest Assocs., Ltd. (In re Timbers of Inwood Forest Assocs., Ltd.),* 484 U.S. 365 (1988); *Sun Valley Ranches, Inc. v. Equitable Life Assurance Soc'y of the United States (In re Sun Valley Ranches),* 823 F.2d 1373 (9th Cir. 1987) ; *Grundy Nat'l Bank v. Tandem Mining Corp.,* 754 F.2d 1436, 1440 (4th Cir. 1985) ; *In re Albany Partners, Ltd.,* 749 F.2d 670 (11th Cir. 1984); *In re 8th Street Village Ltd. Partnership,* 94 B.R. 993 (N.D. Ill. 1988) (correct standard is a feasibility standard rather than a necessity standard).

//

A debtor also fails to show necessity of the property for an effective reorganization if the debtor's plan is unsupported by credible assumptions and projections that offer some basis for confidence that the plan could succeed. *In re Pegasus Agency, Inc.,* 101 F.3d 882 (2d Cir. 1996).

Here, Debtor has neither proposed a plan of reorganization nor even discussed with Legendary the basic structure of a potential plan of reorganization. It is inconceivable to Legendary that Debtor could propose a viable plan of reorganization. See Soni Decl. ¶22. Debtor's counsel has stated that Debtor filed this bankruptcy Petition in the hopes of either convincing Gottex or Legendary to fund the completion of the construction (or to find some other lender to do so) believing that sales of the completed condominiums will fully pay Legendary and perhaps reduce MKA's debt to Gottex with any residual value. See Soni Decl. ¶32.

The officers of Debtor have acknowledged that it does not have any income.

Debtor has admitted that this case is subject to the SARE provisions. Consequently, Debtor must either service the debt or propose a Plan reasonably capable of success within 90 days of the Petition Date, i.e. by September 23, 2009. Debtor cannot demonstrate it has the requisite cash flow to service the debts on the Property (i.e. to Legendary and Gottex), let alone needed to file a confirmable plan of reorganization. The inescapable conclusion is that a confirmable plan in this case is not possible.

Accordingly, to say that it is dubious that Debtor will be able to file, much less confirm, a plan of reorganization in this case is an overstatement, Cause, therefore, exists to immediately terminate the stay under section 362(d)(2) to allow the Bank to exercise its non-bankruptcy rights and remedies against the Debtor.

**C.    Debtor's Filing of This Petition Part of A Scheme to Delay, Hinder Or Defraud Legendary**

Debtor was created just prior to the bankruptcy filing to take title before filing bankruptcy.  This is evident by the fact that MKA initially took title and them falsely claimed that title had been recorded in its name, rather than in Debtor's name when in fact Debtor was not incorporated until 2 weeks after MKA completed foreclosure of the Property.  See, Req For Jud. Not. ¶5 and Exh. 10.   The Property was not transferred to the Debtor for another 5 weeks on January 12, 2009.  Between January 12, 2009 and June 2, 2009, Debtor did nothing in connection with the Property.  It did not begin construction, secure or protect the Property and it allowed the insurances on the Property to lapse.

Furthermore, Debtor filed what is commonly called a "face sheet" filing of only a few pages consisting of the Petition and a few other documents.  No Schedules or Statement of affairs were filed.  The Courts and the Code now recognize such filings as evidence of a bad faith filing.

Debtor caused the Property to be subject to multiple bankruptcy filings. Debtor first transferred the Property to MKA which was in a bankruptcy proceeding to delay and prevent the June 3, 2009 foreclosure sale from proceeding. Debtor then took title from MKA after that bankruptcy proceeding was dismissed by this Court on the eve of another scheduled foreclosure sale. Debtor's bad faith filings are transparent and a blatant abuse of the Bankruptcy procedures.

Debtor Petition failed to identify this case as subject to the SARE and Debtor's counsel refused to amend until repeated demand s were made that this is an indisputable SARE case and it is a violation of Debtor's and Counsel's duty of candor and honesty to the Court, not to have so identified the case. It was clearly apparent that the failure to identify this as a SARE case was to avoid compliance with those provisions. Debtor's Counsel finally relented and Amended the Petition on July 20, 2009.

Debtor had not maintained insurance on the property and has as yet not shown that the premiums for the insurance have been paid. The levels of insurance obtained are inadequate to protect the interests of Legendary and the estate. Legendary is owed over $8.2 million, yet Debtor purchased insurance covering only $7.7 million and that too subject to a 90% co-insurance provision.

Debtor has no plan and no possibility of formulating a plan of reorganization. This case should never have been filed as a Chapter 11 case; this is a dissolution case.

1  Debtor has no assets, other than the Property, no business and no resources to obtain

2  credit.  There is nothing to reorganize and Debtor and its counsel knew this before
3

4  they filed the Petition.  This is precisely the type of abuse the Court must stem.  The

5  docket is already overwhelmed by deserving cases and there is no reason to tolerate
6

7  the types of shenanigans Debtor and MKA have used in this case.

8

9
   **D.    Debtor and It's Counsel Should Bear the Increased Costs and Debt**
10    **Caused by Their Tactics Which Delayed Foreclosure of the Property**

11
   Legendary was entitled to foreclose on the Property on June 3, 2009 but for the
12

13  delays caused by Debtor having subjected the Property to multiple bankruptcy

14  proceedings.  Debtor and Debtor's counsel should bear the costs associated with these
15

16  wrongful delay associated with these bad faith filings.  Legendary should not be

17  forced to look to its collateral for compensation arising from this delay because the
18

19  Property does not have equity to compensate Legendary.  Rather, it is only just that

20  Debtor and its counsel who caused this delay be liable for the consequences of their

21
   actions.
22

23  Rule 9011 prohibits filing of a Petition or paper for improper purposes, such as

24  to harass or to cause unnecessary delay or needless increase in the cost of litigation.

25
   Fed.R.Bank.P. 9011(b)(1); *In re Computer Dynamics,* 252 B.R. 50, 57
26

27  (Bankr.E.D.Va. 1997) (Objective standard used to determine whether a paper was

28
   filed for improper purposes) Court may consider circumstantial facts that surround

the filing as evidence of the signer's purpose. *In re Weiss*, 111 F.3d 1159, 1171 (4th

Cir. 1997), *cert. den.*, 522 U.S. 590, 118 S.Ct. 369 (1997).   Courts may also infer the

purpose of a filing from the consequences of the pleading or motion.   10 Collier on

Bankruptcy ¶9011.04[8][c] (Lawrence P. King ed. 15th ed. Rev. 2007).   "Case law

clearly establishes that imposition of sanctions is appropriate when a bankruptcy

petition is not filed for legitimate rehabilitative purposes, and for the sole purpose of

the filing is to delay foreclosure." *Ca. Fed. Bank FSB v Douglas (In re Douglas),* 141

B.R. 252, 256 (Bankr.N.D.Ga. 1992); *In re Grigsby,* 223 B.R. 558 (Bankr.S.D.Fla.

1999).

   *In re Johnson,* 2008 WL 183342 (Bankr.W.Va.2008) applied these standards

and found the Debtor's Petition was filed as a means to allow Debtor's parent and

grandparent to re-organize their affairs, rather than to reorganize Debtor's affairs.

Debtor there was unemployed, had no independent source of income and lacked the

capacity to fund a plan.   The Court found improper purpose in the filing.   Debtor's

filing in this case is similar; Debtor has no income, no business and no resources.   It

lacks the capacity to obtain credit or fund a plan.   The *In re Johnson* court determined

the filing had caused creditors to incur attorneys fees and the filing delayed

foreclosure of the Property by almost 2 months.   In this case, Debtor's filing has

caused legendary to incur over $34,000 in attorneys fees and the delay of foreclosure

since June 3, 2009 has caused the debt due Legendary by the Borrower to increase by

$160,263.01 by just the hearing date of this motion. See Soni Decl. ¶31. Legendary will not be able to recover this debt from the value of the Property at foreclosure since the debt owed Legendary exceeds the appraised As-Is value of the Property. Debtor should be responsible for this damage caused to Legendary by Debtor's improper filing of the Petition.

*In re Johnson* also found that Debtor's counsel was culpable for the filing of the improper Petition and ordered a disgorgement of the fees that debtor's Counsel was paid by Debtor. Legendary believes that a similar order should issue in this case. Debtor's counsel should have investigated more fully before filing this Petition.

Legendary suffered unpaid accrued interest in the amount of $160,263.01 and $34,000 in legal fees during the delay caused by Debtor's and its counsel's improper actions. See Soni Decl. ¶31. Legendary requests an order requiring Debtor and its Counsel to be jointly and severally liable for these damages suffered by Legendary on account of the ill-conceived filing.

**E.    Waiver of Bankruptcy Rule 4001 Stay**

In light of the delay already suffered by Legendary in exercising its lawful rights and remedies, Legendary requests that the Court waive the 10-day stay provided by Federal Rule of Bankruptcy Procedure 4001 (a)(3) so that Legendary may promptly pursue such rights and remedies.

## V.    CONCLUSION

WHEREFORE, for the forgoing reasons, the Bank respectfully requests that the Court enter an Order pursuant to section 362(d)(l) and (d)(2) terminating the automatic stay of section 362(a) and provide any further relief the Court deems just and appropriate.


Dated: July 20, 2009                    Respectfully submitted,
                                        THE SONI LAW FIRM


                            By:    /s/ Surjit P. Soni
                                    Surjit P. Soni
                                    Attorney for
                                    Legendary Hollywood, LLC

| In re:<br>Detroit Properties, LLC<br><br>Debtor(s). | CHAPTER 11<br><br>CASE NUMBER 8:09-bk-16272-ES |

**NOTE:** When using this form to indicate service of a proposed order, **DO NOT** list any person or entity in Category I. Proposed orders do not generate an NEF because only orders that have been entered are placed on the CM/ECF docket.

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is: 35 N. Lake Ave. Suite 720, Pasadena, CA 91101

A true and correct copy of the foregoing document described <u>MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR RELIEF FROM STAY</u>    will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner indicated below:

I.  **TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF")** – Pursuant to controlling General Order(s) and Local Bankruptcy Rule(s) ("LBR"), the foregoing document will be served by the court via NEF and hyperlink to the document. On 7/21/09 I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following person(s) are on the Electronic Mail Notice List to receive NEF transmission at the email address(es) indicated below:

☐ Service information continued on attached page

II.  **SERVED BY U.S. MAIL OR OVERNIGHT MAIL**(indicate method for each person or entity served):
On    7/21/09    I served the following person(s) and/or entity(ies) at the last known address(es) in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States Mail, first class, postage prepaid, and/or with an overnight mail service addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge <u>will be</u> completed no later than 24 hours after the document is filed

☒ Service information continued on attached page

III.  **SERVED BY PERSONAL DELIVERY, FACSIMILE TRANSMISSION OR EMAIL** (indicate method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on    7/21/09    I served the following person(s) and/or entity(ies) by personal delivery, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on the judge <u>will be</u> completed no later than 24 hours after the document is filed.

Hon. Erithe Smith
United States Bankruptcy Court
411 W. Fourth Street, Suite 5042
Santa Ana, CA 90271-4593

David W. Meadows        david@davidmeadowslaw.com

☒ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

| 7/21/09 | Wendy Genovese | |
| --- | --- | --- |
| Date | Type Name | Signature |

ADDITIONAL SERVICE LIST:

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

**F 9013-3.1**

| In re:<br>Detroit Properties, LLC | CHAPTER 11 |
|---|---|
| Debtor(s). | CASE NUMBER 8:09-bk-16272-ES |

A1 Rentals
24000 Crenshaw Blvd.
Torrance, CA 90505-5275


Allied Nationwide Security
Attn: A.J. Nomair
18570 Sherman Way, Ste C-1
Reseda, CA 91335-8633


Detroit Properties, LLC
26 Corporate Plaza Drive
Suite 260
Newport Beach, CA 92660


Franchise Tax Board
Bankruptcy Unit
PO Box 2952
Sacramento, CA 95812-2952

Gottex Fund Management
780 3rd Avenue, 32 Floor
New York, NY 10017

Henry Baghdady, Receiver
Thrifty Property Mgmt.
725 S. Figueroa St., #3075
Los Angeles, CA 90017

Los Angeles County Tax Ass'or
225 N. Hill Street
Los Angeles, CA 90017


MKA Capital Group Advisors LLC
c/o Daniel White, Esq.
26 Corporate Plaza Dr., # 260
Newport Beach, CA 92660


Office of the U.S. Trustee - SA
411 West Fourth Street
Suite 9041
Santa Ana, CA 92701-8000
Att: Nancy Goldberg

Stuart M. Richter, Esq.
Katten Muchin Rosenman, LLP
2029 Century Park East, 26th Fl
Los Angeles, CA 90067

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

January 2009

F 9013-3.1